558 F.2d 133
 2 Fed. R. Evid. Serv. 296
 UNITED STATES of America, Appellee,
v.
Richard ATKINS, Appellant in 76-2374.
UNITED STATES of America, Appellee,
v.
Arthur Donald MORELLO, Jr., Appellant in 76-2375.
UNITED STATES of America, Appellee,
v.
Samuel Rochelle MASON, Appellant in 76-2376.
 No. 76-2374-76.
 United States Court of Appeals, Third Circuit.
 Argued May 2, 1977
 
 Jonathan L. Goldstein, U. S. Atty., Frank C. Razzano, Asst. U. S. Atty., Newark, N. J., for appellee.
 Jack Nowell Frost, Plainfield, N. J., for Richard Atkins.
 Alfred C. DeCotiis, Newark, N. J., for Arthur Donald Morello, Jr.
 Hubert Johnson, Martin & Johnson, East Orange, N. J., for Samuel Rochelle Mason.
 Before GIBBONS and HUNTER, Circuit Judges, and LAYTON, District Judge.*
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Richard Atkins, Samuel Mason, and Donald Morello, Jr., were convicted of conspiracy and of robbing four New Jersey banks in violation of 18 U.S.C. § 2113. After jury trial in the United States District Court for the District of New Jersey, sentence was imposed. This appeal, alleging numerous trial errors, followed. Because we find reversible error in the exclusion of a hearsay third-party confession to one of the robberies, we order a new trial limited to Counts I, VI, VII, and VIII. In addition, we direct the district court to correct the sentences, in accordance with this opinion.
 
 I.
 
 2
 The ten-count indictment charges Atkins, Mason and Morello with an overall conspiracy (Count I) to violate 18 U.S.C. § 2113 by robbing certain New Jersey banks. The remaining counts concern a robbery of the Trust Company of New Jersey in Jersey City, on December 24, 1974 (Counts II and III); a robbery of the Garden State National Bank in North Bergen, on February 21, 1975 (Counts IV and V); a robbery which included a murder of the First National Bank in Paterson, on April 10, 1975 (Counts VI, VII, and VIII); and a robbery of the Provident Savings Bank in Jersey City, on May 2, 1975 (Counts IX and X).
 
 
 3
 During the trial, a member of the group, one Mastria, was a chief Government witness. Another crucial witness was an undercover agent, Murrow, who wore a tape recorder to one meeting with Atkins where details of the various robberies were discussed. There was clearly sufficient evidence to support the jury's verdict, which was guilty on all counts except that Atkins, not a participant in the Garden State National Bank robbery, was found not guilty on Counts IV and V.
 
 
 4
 We are concerned, though, about proffered testimony that the trial judge excluded. We will discuss that first, and then the sentences.
 
 II.
 
 5
 During the robbery of the First National Bank, on April 10, 1975, a bank guard, John White, was shot and killed by the robbers. Testimony was that while the robbery was in progress, the guard reached for his gun. The robber stationed in the doorway shot him with a sawed-off shotgun, and the other two shot him on their way out. In the taped conversation with Murrow, Atkins claimed it was he who shot White.
 
 
 6
 During trial, the attorney for Atkins produced a witness, one Gail Cotton, who was prepared to testify that on the evening of the robbery, she overheard one Kenny Jackson say that he and Larry had robbed a bank that day and had shot John White. The court excluded the proffered testimony as hearsay not within exceptions 803(24) or 804(b)(3) of the Federal Rules of Evidence.
 
 
 7
 A statement is admissible under Rule 804(b)(3) of the Federal Rules of Evidence if the defendant is unavailable as a witness and it is a
 
 
 8
 (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissable (sic) unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 
 
 9
 During the offer of Cotton's testimony, out of hearing of the jury, the court said the last sentence of that section was intended to prevent just that kind of testimony:
 
 
 10
 . . . Once again, all I can do is repeat. A minor, standing on the street corner in front of a bar, (in) the presence, apparently, of a group of other minors, proclaims that he is the one that shot and killed the bank guard. That's hardly the kind of statement against interest contemplated by the rule. Indeed, there are those more adult who would find that those kind of statements made by minors in the presence of other minors sometimes are in the interest of minors to make.
 
 
 11
 Tr. at 3085-86.
 
 
 12
 Earlier, in discussing Rule 803(24), the court had said:
 
 
 13
 If under the circumstances in a criminal case defendants are going to be permitted to offer the kind of testimony that I have heard in this courtroom of an eighteen year old girl overhearing a conversation between a sixteen year old boy and somebody else in which he proclaims that he committed a crime, and then hear that the sixteen year old has disappeared when we have no way of knowing who he spoke to, and that this conversation took place outside of a bar in the middle of what appears to be a crowded street corner, I fear me (sic) that I don't know where we will be going next. This has nothing of reliability about it. If anything, I can think of nothing more unreliable.
 
 
 14
 If this is going to be the hallmark of admissibility under the new Federal Rules, I can conceive of no other direction in all these trials we will see youths, infants, people who are easily suggestible, coming into court proclaiming that they have heard unknown persons who have since vanished confess to nondescript and nonidentifiable people that they have committed a crime.
 
 
 15
 Tr. at 3083.
 
 
 16
 We are concerned that the trial court may have been considering the credibility of the witness as a factor in its decision to exclude the evidence. Rule 804(b)(3) directs the court to the trustworthiness of the declarant, not of the witness. The record reveals substantial corroborating circumstances which indicate the trustworthiness of the declarant's statement.
 
 
 17
 When Gail Cotton was called in for an offer of proof she testified, out of the presence of the jury, that on the evening of the First National Bank robbery, she was standing with a friend outside Williams Lounge, in Paterson, along with some ten to fifteen other people, and saw Jackson approach an unidentified male. She was standing about a car-length away, and overheard them talking. At the time she had not known there was a bank robbery that day. She heard Jackson say "Man, we just robbed this bank, Man, we killed this guard." Tr. at 3055. The other asked what bank. Jackson answered and told him the guard they killed was "Mr. White." Tr. at 3056. Cotton knew Mr. White, having gone to school with his children. Jackson then, according to Cotton, opened the back of his trunk, and she saw parts of a rifle or shotgun in it. Tr. at 3057. She heard Jackson tell the other to take the gun somewhere, to get rid of it. Tr. at 3058. Cotton then left the bar area with her friend. After parting with her friend she went to Mr. White's house and called his son outside, and told him." Tr. at 3059. The son then told one Frances Darling what had happened; the Darling family went to see Cotton, then they went to the Paterson police station. Cotton told the police. Tr. at 3062. Jackson was picked up and questioned, but denied having any knowledge of the robbery. That police report was apparently not admitted into evidence, but it was allegedly read in part: " Kenny Jackson was questioned about this matter and he steadfastly denied any knowledge of the attempted bank robbery and/or ever having a conversation with anyone about this matter. . . . Kenny Jackson was asked if he would take a lie detector test and he agreed. . . . " Tr. at 3034.
 
 
 18
 Instead of focusing on these circumstances, the trial court asked repeatedly about the age, at the time, of Cotton (19), Jackson (19, Tr. 3036; 18 or 17, Tr. 3069; or 16, Tr. 3039, 3069), and the unidentified conversant ("in his 20's," Tr. 3056). At one point the judge exclaimed "This is bizarre. Suppose you had two eight year olds proclaiming how they had oh, this is ridiculous." Tr. at 3039. In ruling on the applicability of Rule 804(b)(3) the court stressed that the witness was a minor, the declarant was a minor, and the others present were minors. Tr. at 3085. The trial judge also asked Cotton when she last went to school (1974), what grade she had completed (11th), what her occupation was (none), and how she supported herself (Welfare). Tr. at 3060.
 
 
 19
 In our view the court erred in not considering the corroborating circumstances we have specified. It appears from the record that Gail Cotton's testimony met the requirements of Rule 804(b)(3), assuming that Jackson is in fact unavailable. See Tr. at 3068-70, 3081. The exclusion of the third-party confession undermines the integrity of the trial as to the First National Bank robbery. Thus we must order a new trial on Count I as it relates to that robbery only, and on Counts VI, VII, and VIII.
 
 III.
 
 20
 The second area in which we find error is in the imposition of sentences. On Count I, each defendant received five years, to run concurrently to the other sentences. For the Trust Company of New Jersey robbery, each defendant received twenty years for violating 18 U.S.C. § 2113(a) (Count II) and twenty-five for 18 U.S.C. § 2113(d) (Count III), the sentences to run concurrently with each other. For the Garden State National Bank robbery (Counts IV and V) and the Provident Savings Bank robbery (Counts IX and X), the sentences followed the same pattern and were to run consecutively by robbery. The sentence for the third robbery, of the First National Bank, had in addition a term of life imprisonment, for violation of 18 U.S.C. § 2113(e), which was to run consecutively to all the others. Thus, Atkins received life plus seventy-five years, Mason and Morello life plus one hundred years.
 
 
 21
 Two errors were made in sentencing. First, subsections (a) and (d) of 18 U.S.C. § 2113[1] cannot support separate sentences for the same offense, even if they are to run concurrently. See United States v. Corson,449 F.2d 544, 551 n.15 (3d Cir. 1971). Thus, the trial court should vacate the multiple sentences for subsections (a) and (d) so that each robbery has one sentence. Corson, supra, requires that a general sentence be imposed on each bank robbery as if it had been the subject of a single separate indictment. Therefore, a general sentence, in conformity with Corson, will be imposed on Counts II and III as a group, IV and V as a group, and IX and X as a group.
 
 
 22
 Second, we hold today that subsection (e) of 18 U.S.C. § 2113[2] does not constitute a separate offense. Thus, the maximum sentence for the third robbery, the one for which we must order a new trial, is a single sentence under subsection (e). In this holding we join the Fifth, Eighth, and Ninth Circuits. See Sullivan v. United States, 485 F.2d 1352 (5th Cir. 1973); Jones v. United States, 396 F.2d 66 (8th Cir. 1968), cert. denied,393 U.S. 1057, 89 S.Ct. 695, 21 L.Ed.2d 697 (1969); United States v. Faleafine, 492 F.2d 18, 24-25 (9th Cir. 1974).
 
 
 23
 We have carefully considered the appellants' other contentions and find them to be without merit.
 
 IV.
 
 24
 For the foregoing reasons, we will order a new trial on Count I as it relates to the First National Bank robbery, and on Counts VI, VII, and VIII, so that the trial court can apply Fed.R.Evid. 804(b)(3) to Cotton's proffered testimony, in accordance with our opinion. Last, we will vacate the sentences on the remaining counts and remand to the district court to impose sentences consistent with this opinion. An order to that effect will be entered.
 
 
 
 *
 Caleb R. Layton, III, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 Subsections (a) and (d) provide
 (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
 Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny
 Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
 (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.
 18 U.S.C. § 2113(a), (d).
 
 
 [2]
 Subsection (e) provides
 (e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.
 18 U.S.C. § 2113(e).