STATE of Missouri, Respondent,

v.

Orval Dwayne DAVIDSON, Appellant.

No. 80957.

Supreme Court of Missouri, En Banc.

Dec. 22, 1998.

Rosemary E. Percival, Office of the State Public Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

PER CURIAM.[1]

A jury convicted Davidson of two counts of second degree murder, one count of first degree assault, and three counts of armed criminal action. Davidson appeals from the judgment resulting from the convictions. Subsequently, Davidson filed a motion pursuant to Rule 29.15, which was overruled. He appeals the judgment overruling the motion. The judgments are affirmed.

Davidson drove a car from which one of his companions fired eleven to twenty rifle shots at three people walking near Twelfth and Michigan in Kansas City. The shooting occurred in the early hours of October 16, 1993, although some of the events that comprise the confusing set of facts started just before midnight on the previous day. Because many of the witnesses, including Davidson, changed in whole or in part their oral, written and video statements and depositions given to police and the attorneys, the facts are difficult to set out. An overview of the case follows. The rest of the facts will be included in the appropriate point of the direct appeal.

Witness Jones was standing near 1025 Woodland at 10:30 p.m. on the fifteenth of October. An old yellow station wagon pulled up, and a person in the back seat gave him a "crazy look." The car drove off down Twelfth Street, and Jones told bystanders that "these white boys ... was [sic] about to come back and do something." Jones told police and counsel for the defendant that some twenty seconds later he "heard lots of gunshots." On the stand, however, he said the time lapse was five minutes, and the twenty second estimate was "just a figure of speech."

Nearby, in the 2800 block of East Tenth (also in the vicinity of the crime scene involved in this case) three black men, Freddie, Fahoone and Faheene Manor were talking sometime after 11:00 p.m. An old, noisy,

---

1. The appeal in this case was originally decided by the Court of Appeals, Western District, in an opinion written by the Honorable Harold L. Lowenstein. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of the Court.

white to yellow cream-colored, four-door Toyota hatchback pulled up, and a white man got out brandishing a .22 caliber weapon and uttering a racial epithet. The Manors scattered and saw the car leave. One of the Manors recognized the man with the gun as Randy Yeager.

At midnight, Jermaine Irving was walking between Woodland and Michigan on Twelfth Street with three companions, Taylor, Simpson and Caldwell. Irving told police he saw a four-door large, white car, a Buick Skylark or Chevrolet, drive past them. Three or four white men were in the car, which turned around and approached them. A white man, either from the back seat or who had jumped from the back seat, fired at them. Simpson and Taylor were hit and killed. Irving ran and was shot in the buttocks. Caldwell escaped without injury. The car's lights were off and it drove away. Eleven .22 caliber shell casings fired from the same weapon were found at the scene.

The police had no suspects until November when they received a hotline tip that someone named "T.J.," who was associated with a gang known as the Fremont Boys or the Fremont Hustlers, was the shooter. It is at this point the facts become more difficult to comprehend or explain. Suffice it to say, the police interviewed some of the Fremont gang and then called in Rodgers and Rohman who at first denied the shooting. Later Rodgers and Rohman gave statements saying they were riding around that night with Smalley and someone named Jay who was driving, when Smalley, also known as "T.J" or "Psycho," shot the victims. Rodgers said the car was a blue, four-door sedan with license number QNJ–072. Within a matter of days, Rodgers and Rohman called police and retracted their statements and so advised Smalley's attorney. They both contended they had been tricked by police, thinking they were going to headquarters to eat pizza and talk about a different killing, and only gave the statements so they could go home. Kansas City police later determined the blue Oldsmobile with the above license had been crushed over two months prior to the October massacre.

The investigation now shifted to a light-colored Toyota wagon with license number R38–273. On December 13, 1993, David Myers, while in jail on other charges, told police that Randy Yeager told him that Yeager had been the shooter while riding in Tommy Smith's above-described car. Myers said he was also told a Christopher Soliz was a passenger, while Smith drove. The Kansas City police quickly determined Myers' story was a fabrication.

In January 1994, the police spoke with Johnson, also a part of the Fremont Hustler's gang, who, after first declaring no knowledge of the shootings, gave a statement stating that on the night in question he was with Smalley, Rodgers, Rohman, and the defendant, Davidson. Johnson said they were all in Davidson's car, a 1982 brown, two-door Chevrolet Citation, and Davidson was driving. This marks the first time Davidson was mentioned as being in the car involved in the shootings. Johnson told police that Smalley did the shooting and that there were five men in the Davidson automobile. Johnson stated that they left a party at Ms. Preston's house to go buy PCP, or other drugs, and that while driving down Twelfth Street, Davidson turned the car around and slowed the car to allow Smalley to fire the shots. Johnson also gave deposition testimony in which he repeated the above facts. Johnson had previously been incarcerated for armed robbery, but was out on probation at trial, after agreeing to testify for the prosecution in this case. At trial, however, Johnson disavowed his previous statements and testified for the defense. He testified he made up all the information contained in his police statement and deposition testimony.

Having been advised by Johnson that Davidson was the driver, the police went to the gas station where Davidson worked. Davidson agreed to talk and went to the police station because, according to him, he thought the Kansas City police wanted to talk about a homicide that had occurred at the gas station. Police questioned Davidson about the incident of October 1993. He initially denied any involvement in the homicides and assault, but he was told about Johnson's statement. Davidson then allowed

them to search his brown, two-door 1982 Chevrolet Citation. He also admitted driving the car and gave a videotaped statement, which was presented to the jury in the trial of this case. In his video-taped statement, the defendant admitted he was driving his car down Twelfth Street with Rogers, Rohman, Johnson and Smalley, that he turned onto Michigan, drove a half a block, turned around in the middle of the block and came back, and at Smalley's request, slowed down and turned off the headlights allowing Smalley to fire the shots at the people on the walk. Davidson then sped up and left.

Surviving victim Irving, who was hit in the attack, then identified Davidson's car as being the one involved in the attack. The other person shot at, Caldwell, could make no identification.

At Davidson's trial he, along with Rogers, Rohman and Johnson (all of whom testified for the defendant) retracted their inculpatory statements, with their explanation being that the police had supplied them with the facts, and that they had no part in the shootings. Johnson said he made up everything contained in his previous statement so the police would let him go home, and he could give no reason for having said Davidson drove the vehicle. Rohman testified he was at a conference in Cleveland, Ohio, on the dates in question. This testimony was corroborated. The defense also produced evidence that portions of Johnson's previous statement concerning a party at Ms. Preston's house were untrue.

Davidson's point on direct appeal involves the trial court's decision to exclude Myers' testimony about Yeager's inculpatory statement made to him. In an effort to prove someone else shot the victims, and specifically, that someone other than Davidson drove the car, Davidson sought to put Myers on the stand to testify about the inculpatory statement Yeager had made to Myers and that Myers had reported to the police in December 1993. First, defense counsel called Yeager. He testified that he had not been involved in the Twelfth and Michigan homicides, that he had never told Myers he had been the shooter, and that he had not taken Myers to look for casings or a .22 rifle.

Defense counsel then sought to use Myers' testimony to impeach the Yeager trial testimony as well as to show Davidson's innocence. The trial judge sustained the state's objections to Myers' testimony based on relevancy, improper hearsay, that the testimony was not exculpatory as to Davidson, and that the testimony was collateral as to impeachment of Yeager.

The following information comes from the offer of proof testimony of Myers. Myers, an acquaintance of Randy Yeager, and who was with Yeager earlier in the evening on the date of the crime, had been approached by Yeager on October 16th. According to Myers, Yeager confessed to him at that time that he had been the gunman in the crimes here involved. Yeager said he, Tommy Smith, and Chris Soliz drove to Twelfth and Michigan in Smith's car on the previous night, and Yeager fired at the black victims with a .22 rifle. Myers claimed that Yeager asked him to go with Yeager to Smith's car, a Toyota hatchback, to try and retrieve shell casings from the car. Myers further claimed that they found several .22 casings, but could not find the murder weapon. Myers reported the Yeager conversation to police on December 13, 1996. Myers then went with police to the now abandoned Smith car, and Myers was immediately told his story was untrue. The police told Myers that if he did not change the statement he made on December 13th, he would be charged for having lied.

In the Davidson offer of proof, Myers said he had only been trying to receive favorable treatment for himself. As stated earlier, Myers was in jail on other charges facing ten years imprisonment. Myers made a new statement the very next day retracting the Yeager implication, saying he was lying in his December 13 statement. His trial testimony would have been that his December 13 statement implicating Yeager was true and that the December 14 retraction was a lie.

Against this backdrop, the appellant, Davidson, raises the point of an abuse of discretion by the trial court in not allowing the jury to hear the Myers' testimony. This denial, he asserts, did not allow the jury to hear that someone else had confessed that

that person and others committed the crimes. Davidson asserts the Myers testimony was admissible: (a) under *State v. Umfrees*, 433 S.W.2d 284, 287 (Mo. banc 1968), (b) as substantive evidence under section 491.074, RSMo 1994, and (c) under case law to impeach Yeager's trial testimony of his non-involvement.

■ The trial court ruled the Myers' testimony was not relevant, was hearsay, did not directly exonerate Davidson, and was improper impeachment as to a collateral matter. This ruling was correct under these facts where the defendant sought to use the testimony of Myers that Yeager had been the shooter. Evidence that another person had an opportunity or motive for committing the crime is not admissible without proof that the other person did some act directly connecting that person with the crime. *State v. Umfrees*, 433 S.W.2d 284, 287 (Mo. banc 1968). A declaration against a penal interest is not admissible as an exception to the hearsay rule, *State v. Blankenship*, 830 S.W.2d 1, 6 (Mo. banc 1992), but may be admissible as a due process right of the defendant only if the declarant is shown to be unavailable as a witness, there are considerable assurances of the statement's reliability, and the statement, if true, would exonerate the defendant. *State v. Jennings*, 815 S.W.2d 434, 448 (Mo. App.1991). Three indicators of reliability are set out in *Chambers v. Mississippi*, 410 U.S. 284, 300—301, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973): the statement needs to be (a) unquestionably against interest, (b) spontaneously made to a close acquaintance, and (c) corroborated by other evidence in the case.

■ The proffered Myers testimony fails for several reasons. First, the Yeager account tended to exonerate Smalley rather than Davidson (although it said someone other than Davidson drove the car). Second, the declarant, Yeager, was available to testify since he testified for the defense. *State v. Bolds*, 913 S.W.2d 393, 398–99 (Mo.App. 1996); *State v. Danback*, 886 S.W.2d 204, 208 (Mo.App.1994). Third, the testimony was not sufficiently reliable because there was no substantial corroboration of the Myers account. *State v. Smulls*, 935 S.W.2d 9, 20—21 (Mo. banc 1996).

■ In addition, the trial court was correct in denying admission based on an impeachment theory. Yeager testified for the defendant that Davidson had nothing to do with the murders and the assaults. Davidson had no legal basis to bring Myers in to impeach testimony that did not implicate Davidson.

Davidson's remaining argument for admissibility is that the evidence is admissible under section 491.074, RSMo 1994, which reads:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 545, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

■ There is no question that the crimes charged here fall under this statute on the admissibility of prior inconsistent statements. *State v. Patterson*, 826 S.W.2d 38, 40 (Mo.App.1992). The problem is that the basis for admissibility enunciated in section 491.074 was not presented at trial and, therefore, is not properly preserved. *State v. Danback*, 886 S.W.2d at 208. As a result, review of this point is granted under plain error, *State v. Bolds*, 913 S.W.2d at 398, and relief will only be granted where substantial rights are involved and this Court finds a manifest injustice or miscarriage of justice has resulted therefrom.

Much of the common law interpreting the statute concerns the foundation that must be laid by the party seeking to introduce a prior inconsistent statement in the trial as substantive evidence. Since the basis for admissibility was not mentioned at trial, proper foundation questions are not pertinent. It appears, however, that had section 491.074, RSMo 1994, been relied on to support the admissibility of Myers' testimony, the proffered testimony would have come in as evidence. There is no question that Yeager denied, at trial, that he had even been involved in the drive-by at issue. Likewise, there is no question that Myers had previously stated that Yeager had implicated himself for the commission of the crimes Davidson was being tried for as an accessory. As such, Yeager's two alleged statements, if

made, were totally inconsistent and created a jury question under the statute as to whether Yeager was telling the truth at trial or at the time he allegedly made the statement to Myers. See *State v. Bowman,* 741 S.W.2d 10, 14 (Mo. banc 1987).

█ Having determined that the proffered testimony of Myers may have qualified as a prior inconsistent statement under the statute, it remains to consider if plain error resulting in manifest injustice or miscarriage of justice occurred. In *State v. Woodworth,* 941 S.W.2d 679, 692 (Mo.App.1997), the court said where an inconsistent statement that went to vindicate the accused was, under section 491.074, improperly kept from the jury, and where the remaining evidence against the defendant was tenuous, the result was to reverse and remand for a new trial. *Id.*

Here, under the review of plain error, the Court cannot do what was done in *Woodworth.*

In the case at bar, the following substantial evidence supports the judgment of conviction: Irving identified the Davidson car as the one carrying the assailant; Johnson, Rohman and Rogers all gave initial statements that Davidson drove his car; and the defendant, in his initial video-taped statement, admitted he was driving the car when Smalley fired the shots at the people on the sidewalk. In addition, the defendant's previous account of the incident coincided with those of the other three witnesses as to the movement of the car on the night in question. A showing of manifest injustice or the occasion of a miscarriage of justice cannot be established.

█ The judgments are affirmed.[2]

All concur.

**2.** Appellant raised three points in the brief filed in the court of appeals, one of which related to the Rule 29.15 motion. In the substitute brief filed in this Court only one point is raised, which relates to the direct appeal. Any material included in the court of appeals brief that is not included in the substitute brief filed in this Court is abandoned. *Rule 83.08; State v. Doolittle,* 896 S.W.2d 27 (Mo. banc 1995). As there is no point directed to appellant's Rule 29.15 motion, the appeal from the overruling of the motion is abandoned. *State v. Thomas,* 893 S.W.2d 382 (Mo. App.1995).