**STATE of Missouri, Respondent,**

v.

**Tremayne L. GUINN, Appellant.**

**No. WD 57191.**

Missouri Court of Appeals,
Western District.

July 31, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2001.

Application for Transfer Denied
Nov. 20, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for appellant.

Rosemary E. Percival, Asst. Public Defender, Kansas City, for respondent.

Before PAUL M. SPINDEN, Chief Judge Presiding, HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PATRICIA BRECKENRIDGE, JAMES M. SMART, JR., JOSEPH M. ELLIS, EDWIN H. SMITH, VICTOR C. HOWARD, THOMAS H. NEWTON, RONALD R. HOLLIGER, Judge, and FOREST W. HANNA, Senior Judge.

RONALD R. HOLLIGER, Judge.

Tremayne Guinn was convicted by a jury of one count of first-degree robbery, § 569.020 RSMo, 1994;[1] one count of first-degree assault, § 565.050; and two counts of armed-criminal action, § 571.015. He claims on appeal: (1) error in excluding testimony by four of his relatives that Cornelius Johnson had confessed to them that he had held the gun during the robbery; (2) limitations on Guinn's right to cross examine a detective about his failure to investigate Cornelius Johnson; and (3) that the trial court abused its discretion by responding to a jury question about Guinn's alibi. Because we find that the trial court properly excluded the hearsay evidence of Johnson's out of court statements and did not abuse its discretion in the other rulings complained of the judgment is affirmed.

## Facts and Procedural History

On September 11, 1998, Ms. Lori Clanin returned to her apartment at 3434 Gillham from grocery shopping at about 5:20 A.M. As she parked, she noticed two men walking down a side street but did not pay much attention to them. Clanin got out of the car, walked around to the passenger's side, and took her groceries from the car. When she turned around, one of the men was standing very close to her and held a small revolver to her chest. As he held the gun to her chest, he took Clanin's purse from her car and said "Look, bitch. ...." Clanin felt that the assailant was going to shoot her, so she pushed the gun down. The man stepped back and the gun went off. The bullet hit a Medic–Alert tag Clanin wore on a necklace, changed directions and entered the top of her left breast. The bullet then exited her breast and grazed her abdomen. The assailant

---

1. All further statutory references are to the Revised Statutes of Missouri, 1994, unless indicated otherwise.

ran in a northeast direction, and his companion ran in a different direction.

Clanin and a detective used a computer program to create a composite sketch of her assailant. Apparently Clanin was somewhat discontent with the sketch because her assailant's nose was portrayed as bigger than it actually was, and her assailant's braided hair was not portrayed exactly as it appeared to her. Because the computer program offered no choice for his style of braided hair, a detective instead sketched the assailant's hair. This sketch was later published in the *Kansas City Star*.

The police nonetheless received several responses because of the sketch. Based on one of those calls, a detective compiled a photographic lineup and showed it to Ms. Clanin five days after the robbery. Ms. Clanin noted that the eyes of one of the people in the lineup resembled her assailant, but she concluded he was not the robber.

Soon thereafter, the police received a tip from the apartment manager at 3346 Gillham, a complex northeast and across the street from where the shooting and robbery occurred. The manager claimed to have seen the person in the sketch visiting a tenant in Apt. 2–E of that building. The apartment manager identified a photo of Guinn as the guest of the apartment complex and as the person the manager thought portrayed in the sketch. Later, in a photo array that included the guest of Apt. 2–E, Clanin identified Guinn as her assailant.

A man working in the 3346 Gillham apartment complex later found Clanin's purse in the bathroom of an apartment across the hall from Apt. 2–E. The workers had permission to use the water facilities and restroom in the apartment where he found the purse. The door to that apartment had been kicked in, though entrance to the building itself was restricted to those with keys.

Guinn was arrested and charged with the robbery and shooting. At trial Guinn sought to call four of his relatives to testify that a resident of Apt. 2–E, Cornelius Johnson, (referred to at times as Guinn's roommate) had admitted that he committed the crimes. After the trial court sustained the State's hearsay objection the defense made an offer of proof.

The first witness in the defense's offer of proof was Guinn's mother who testified that in September 1998, her son had a mustache and goatee. She also testified that she knew a young man named Cornelius Johnson:

Q: How do you know Cornelius Johnson?

A: I've been knowing Cornelius Johnson ever since five years ago.

Q: And how come you've known him since he was nine? How did you meet him?

A: Well, we first met when we stayed in Kansas City, Kansas, and Carlos Johnson is Cornelius Johnson's eldest brother. Him and Tremayne became best of friends at the age of nine until now.

Q: Okay. And do you have the opportunity to see Cornelius Johnson on a regular basis?

A: He runs from me.

Q: Well, before this happened, did you see Cornelius on a regular basis?

A: (Witness nodded head.)

Q: Is that a "yes?"

A: Yes.

She then testified that in the fall of 1998 Guinn had a short afro and that Cornelius wore his hair braided and had no facial hair. She said she had a conversation with Cornelius in late September or early Octo-

ber. She stated that Cornelius "first said he shot the bitch" and that the woman grabbed his hand and really shot herself. He also said that he and Tremayne had walked to the store to get some cigarettes and that he (Cornelius) had pulled the gun to rob her.

The next witness was Guinn's 11–year–old sister who testified that the day before New Year's she talked to Cornelius Johnson about the shooting: "... he had brought a BB gun over there and let my little brother see the BB gun and then my little brother said, 'Who shot that lady?' and then he said, 'I did.' And I said, 'Why?' and he said, 'Don't worry about it.' "

Next testifying was Guinn's nine-year-old brother who testified he asked Cornelius "who shot that lady and he said he did." And then he said, "Don't worry about it."

The last witness was Guinn's 19–year–old cousin. She testified that in September of 1998 she lived at 3344 Gillham in an apartment with Carlos Johnson, Tremayne Guinn, Carlos' mother and his little brother, Cornelius Johnson. She testified that Cornelius said that he robbed that lady and said he wasn't trying to shoot her. She had no idea when the conversation took place.

After hearing this testimony the court reaffirmed its ruling disallowing the testimony and observed that there was "no collateral source of proof" or "substantial evidence of reliability."

## ADMISSION OF THE OUT OF COURT CONFESSIONS

Guinn admits that the proffered confessions of Johnson are hearsay but argues that a declaration against penal interest is admissible under certain conditions even though Missouri does not recognize such an exception in criminal cases. Guinn contends that those conditions were met here

and that admission was constitutionally required under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). He asserts that the *Chambers* rule was adopted in Missouri in *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981). The State argues that Missouri continues to follow the common law rule that declarations of an unavailable witness are not admissible as an exception to the hearsay rule. The State agrees that this rule is subject to a narrow constitutional exception created by *Chambers* but contends that Guinn's evidence does not fall within that exception and was therefore properly excluded under Missouri's general rule.

Guinn argues that the evidence was offered to prove that Johnson and not Guinn committed the crimes. He claims that he met the standard that evidence of another's involvement must directly connect the other person with the criminal act, and at the same time exonerate the defendant, citing *State v. Rousan*, 961 S.W.2d 831, 848 (Mo. banc 1998). The State admits that the evidence, if admissible, is relevant under this standard. Thus the State concedes that Johnson's alleged statements were against his penal interest.

### Standard of Review

■ "The trial court has broad discretion to admit or exclude evidence at trial and this Court will reverse only upon a showing of a clear abuse of discretion." *State v. Chaney*, 967 S.W.2d 47, 55 (Mo. banc 1998).

### ANALYSIS

I. **Was exclusion of the testimony of four witnesses concerning a confession a violation of Guinn's right to present a defense?**

■ Guinn contends that there are four elements for admissibility of a statement

against penal interest: (1) the declarant is shown to be unavailable as a witness; (2) there are considerable assurances of the statement's reliability; (3) the statement, if true, would exonerate the defendant; and (4) the confession was corroborated by other evidence in the case. As stated above, the State agrees that the third element is satisfied. Guinn claims that the State stipulated that Johnson was not available. The State does not disagree that as a matter of fact Johnson was unavailable. But, the State argues, unavailability is not an element under the rule pronounced in *Chambers* and adopted by the Missouri Supreme Court in *Turner.* Specifically, the State argues that under *Chambers* and *Turner* the evidence of Johnson's extrajudicial confessions was not admissible for the very reason that Johnson was unavailable. In other words, stated conversely, admission is required under *Chambers* and *Turner* only if the witness is available.

A more detailed discussion of *Chambers* sheds light on the State's contention. Mr. Chambers called a witness named McDonald and got his confession to the crime admitted into evidence. On cross-examination the State elicited testimony from McDonald that he did not commit the crime and had repudiated an earlier confession. *Chambers,* 410 U.S. at 291, 93 S.Ct. 1038. Chambers then sought to admit the testimony of three witnesses to whom McDonald had admitted that he did the shooting. This attempt ran afoul of two Mississippi rules of evidence. The first denied treatment of McDonald as a hostile witness because of Mississippi's "party witness" or "voucher" rule. The second was the Mississippi rule excluding McDonald's out of court confessions as hearsay. *Id.* at 292–94, 93 S.Ct. 1038. This common law rule, as in Missouri, did not recognize an admission against penal interest as an exception to the hearsay rule in criminal case. *Id.* at 293, 93 S.Ct. 1038.

In *Chambers,* the United States Supreme Court expressly abjured the establishment of a new principal of constitutional law or the intent to restrict each state's ability to determine its own rules of evidence. Instead the Court held that "under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Id.* at 302–03, 93 S.Ct. 1038. The Court found that the application of the two evidentiary rules in *combination,* where the circumstances of the hearsay statements provided considerable assurances of their reliability denied Chambers a fair trial. *Id.*

The State argues that the United States Supreme Court emphasized the declarant's *availability* at trial for cross-examination. *Id.* at 301, 93 S.Ct. 1038. The State points out that the Supreme Court did not reject Mississippi's common law rule excluding declarations against penal interest (a rule similar to Missouri's) but rather found that the rationale and policies underlying the rule (prevention or discouragement of perjury) were largely diminished when the declarant was available for cross examination at trial and there were sufficient indicia of reliability. *Id.* The State argues that the Missouri Supreme Court in its first consideration of *Chambers* likewise placed great emphasis on the concept of availability of the declarant for cross-examination.

In *Turner,* the defendant called a witness, Johnny Mitchell, who had allegedly confessed to the crime, but Mitchell refused to testify asserting his Fifth Amendment privilege. The defendant then sought to call another witness, Cooper, who had overheard Mitchell's alleged confessions. A hearsay objection to his testimony about Mitchell's out of court state-

ment was sustained. *Turner*, 623 S.W.2d at 8. On appeal Turner argued that Mitchell's declaration against penal interest was admissible under *Chambers* arguing, "that after *Chambers* we should unqualifiedly admit declarations against penal interests in criminal cases." *Id.* at 8–9. The Missouri Supreme Court noted that the Court in *Chambers* had itself expressly refused to hold that due process required abolition of the common law evidence rule barring such declarations in criminal cases. *Chambers*, 410 U.S. at 302–03, 93 S.Ct. 1038; *Turner*, 623 S.W.2d at 9. The Missouri Supreme Court then proceeded to analyze the factual differences before it and those confronting the Court in *Chambers:*

> While in a case such as *Chambers*, where substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused, declarant's averments against an interest penal in nature may not be excluded, **such circumstances requiring admission of the hearsay are missing here. When called to testify at defendant's trial, Johnny Mitchell refused, asserting his Fifth Amendment privilege, and thus was unavailable for a test of credibility.** Nor was there corroborating evidence to insure the trustworthiness of his purported declarations.

*Turner*, 623 S.W.2d at 9 (emphasis added). The Court also emphasized that in *Chambers* the declarant was cross-examined by the State and his demeanor and credibility considered by the jury, concluding, "[w]e also observe that the dangers inherent in opening the door to extrajudicial confessions made by one not a party to the proceeding militate against extending the rule of *Chambers* beyond the facts pre-

sented there." *Id.* As the State points out, the facts in *Chambers* presented an available, not unavailable, out of court declarant.

Nevertheless, as the defendant argues, a long line of post-*Turner* decisions by the intermediate appellate districts have, to the extent mentioned, universally declared that unavailability is a element for application of the *Chambers* doctrine.[2] Those same decisions, however, reiterate that Missouri continues to follow the common law rule refusing to accept declarations against penal interest as an exception to the hearsay rule in criminal cases. A number of states and the federal courts through the Federal Rules of Evidence have abandoned that common law rule. A hearsay exception in civil cases for declarations against penal interest has long existed and has generally included a requirement that unavailability be shown. *State v. Grant*, 560 S.W.2d 39, 43 (Mo.App.1977). As state and federal courts have extended the reach of the exception to criminal cases, most state evidence rules and the Federal Rule of Evidence § 804(b)(3) have included an element of unavailability. 2 McCormick on Evidence, § 320 (John W. Strong, ed., 5th ed., West 1999). This extension is a result, however, of the adoption or modification of rules of evidence and not as a constitutional matter under *Chambers*. Much of the confusion may result from a failure to recognize that *Chambers* is not intended to establish limitations on admissibility or change the rules of evidence but rather to establish where admissions of evidence otherwise properly excluded is constitutionally required. *See* McCormick at § 318 n. 9.

The State argues that this confusion, led by the intermediate appeals opinions, has

---

**2.** Representative are the decisions in *State v. Carroll*, 629 S.W.2d 483, 485, 486 n. 2 (Mo. App. W.D.1981); *State v. Danback*, 886 S.W.2d 204, 208 (Mo.App.E.D.1994); *State v. Dayringer*, 755 S.W.2d 698, 702 (Mo.App. S.D.1988).

resulted in the effective abolition of Missouri's common law rule barring admission of declarations against penal interest in criminal cases as a hearsay exception despite broad statements in the decisions that Missouri still follows the rule. In effect, the State argues that to make unavailability an element for admission of such declarations that meet other reliability tests is to state in essence Federal Rule of Evidence § 803(b)(4), which abrogates the common law rule. This, the State contends, is required neither by *Chambers* or *Turner*.

We might be persuaded by the State's argument but for its candid acknowledgment that the Missouri Supreme Court described "unavailability" as an element of the *Chambers* rule in *State v. Davidson*, 982 S.W.2d 238, 242 (Mo. banc 1998). Nevertheless, the Court continued to restate the Missouri rule of evidence to be that a declaration against penal interest is not admissible as an exception to the hearsay rule in criminal cases. Although there was no discussion of unavailability versus availability, the *Davidson* decision's application of the *Chambers* holding will apparently now permit admission of a declaration against penal interest of an unavailable declarant if the other elements are satisfied. We are bound to follow the decisional dictates of our Supreme Court. Mo. Const. Art. V, Sec. 2; *Holt v. Director of Revenue*, 3 S.W.3d 427, 431 (Mo. App.1999). We must therefore reject the State's contention that *Chambers* does not apply.

There are other reasons under *Chambers* that, nevertheless, require affirmance of the trial court's decision in this case. The four witnesses proffered by the defense were appellant's mother, his cousin, his eleven-year-old sister, and nine-year-old brother. Although their credibility as witnesses would be a decision for the jury if allowed to testify, it is the function of the trial court, and indeed its duty, to make an initial determination as to whether substantial indicia of reliability have been shown under *Chambers* and *Turner*. We review the trial court's ruling rejecting the proposed testimony for a clear abuse of discretion. *State v. Chaney*, 967 S.W.2d 47, 55 (Mo. banc 1998).

### INDICIA OF SUBSTANTIAL RELIABILITY

Our Supreme Court has approvingly noted that under the *Chambers* ruling the out-of-court statements had to be made under circumstances demonstrating "considerable assurance of their reliability." *State v. Skillicorn*, 944 S.W.2d 877, 885 (Mo. banc 1997)(quoting *Chambers*, 410 U.S. at 300), 93 S.Ct. 1038. The trial court correctly ruled that such assurances were not present in this case. The tests for reliability under *Chambers* are: "(1) each confession was 'in a very real sense self-incriminatory and unquestionably against interest;' (2) each statement was spontaneously made to a close acquaintance shortly after the murder occurred; and (3) the statements were corroborated by other evidence." *State v. Smulls*, 935 S.W.2d 9, 21 (Mo. banc 1996) (citations omitted). Neither the second nor third elements are satisfied here.

The relationship between the out-of-court declarant (Johnson) and each proposed witness is an important factor. A statement, particularly an admission to a crime, made to someone of long-standing and confidential relationship is more likely to be trustworthy. Here, the only evidence as to Guinn's mother's relationship with Johnson was that he was her son's best friend and she had known him since he was nine years old (there was no specific evidence how old Johnson was but some indication in the record that he was about

14 years old). There was no evidence how well she knew him, how often she saw him, or anything else that might indicate that she might be his confidante in any manner. The only evidence regarding the nature of the cousin's relationship was that she lived with Johnson's brother in the same apartment as Guinn and Johnson. There was no evidence of how long she had known him or otherwise what their relationship might be. Regarding Guinn's brother and sister there was even less evidence of their relationship with Johnson.

Nor was there substantial evidence of spontaneity. Neither the mother nor the cousin, who did not know the date when the confession was allegedly made, gave any indication as to how the conversation came up. The alleged statements made to appellant's eleven- and nine-year-old siblings were hardly spontaneous; they were in response to a question, "Who shot that lady?" and occurred over three months after the crime. The only fact that even arguably would satisfy the second part of the *Chambers* test was that the statement to the mother allegedly occurred about three weeks after the crime.

Nor was there corroboration by other evidence. The victim's purse was found (in a vacant apartment) across the hall from an apartment in which both Guinn and Johnson lived. It is as equally corroborative of Guinn's guilt as of Johnson's. Although the mother did testify that Johnson, not Guinn, wore braids at the time of the crime, that alone is not substantial indicia of the reliability of the alleged confession. Nor does the fact that the victim saw two men before the crime and saw two men run from the scene point in any special way to Johnson as opposed to any other man.

Nor is this case like *Chambers* where "the sheer number of independent confessions provided additional corroboration for

each." 410 U.S. at 300, 93 S.Ct. 1038. Here the alleged confessions to the mother and cousin were apparently made at the same time without evidence of spontaneity or close acquaintanceship as discussed above. The only "independent" confession was the one made to the eleven-and nine-year-old siblings of appellant three months after the crime. The final factor argued by Guinn, as providing corroboration, is that the jury requested exhibits and asked the court for guidance on several occasions. Asking the court for exhibits can hardly serve as corroboration of Johnson's alleged confession. Nor does such a request indicate that this was a close case. Even if it were close, and such a request was a proper factor in determining whether an abuse of discretion occurred, the closeness of the case is again not corroborating evidence of Johnson's alleged confession. We believe that the proffered out-of-court confessions lacked any real and substantial indicia of reliability and trustworthiness. Their admission was not constitutionally required under *Chambers*. The trial court did not abuse its discretion in excluding them as hearsay.

## II. Did the trial court abuse its discretion in forbidding Guinn from cross–examining a detective on his failure to gather evidence?

■ Guinn next argues that the trial court erred in excluding evidence that the police failed to investigate Johnson, including that the police failed to show Clanin and the apartment manager photos of Johnson, who lived with Guinn and who had a criminal history that included robbery. Specifically, the defense argued that it should have been able to cross-examine Detective James Herrington on his failure to investigate Johnson's potential involvement in the case.

In so arguing, Guinn cites no persuasive authority. Appellant argues first that the excluded testimony is relevant. However, relevancy alone is insufficient. In *State v. Schneider*, the Supreme Court of Missouri confronted a similar situation. 736 S.W.2d 392 (Mo. banc 1987). *Schneider* involved the state's failure to gather evidence at the crime scene including dog hair, human hair, fiber or soil samples, and to administer atomic absorption tests to see whether the defendant had recently fired a handgun. *Id.* at 401. The *Schneider* court relied on *State v. Simpson* and noted that, although the state bears the burden of presenting sufficient evidence for a submissible case, the state "is not bound to gather and present all physical evidence conceivably germane to its case in chief. More precisely ... the state is not required to account for its failure to gather or present such evidence." *Schneider*, 736 S.W.2d at 402 (citing *Simpson*, 611 S.W.2d 556, 560 (Mo.App.1981)). Thus, the fact that the detective's excluded testimony is relevant or germane is not alone a sufficient factor to warrant admission.

▮ Appellant's second argument is he was denied the right to present a defense because the trial court prevented him from cross-examining the detective about his investigation. However, although a defendant has the right to cross-examine his accusers, that right is not without limitation. *State v. Dunn*, 817 S.W.2d 241, 244 (Mo. banc 1991). "The defendant must be given 'an opportunity for effective cross-examination, but not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Id.* (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). Moreover, the *Dunn* court held that "[e]ven where questions regarding other persons are relevant to establishing some element of the

defense, it is within the trial court's discretion to restrict cross-examination." *Id.* at 245.

Because of the principle in *Schneider* and because of the trial court's discretion regarding the extent of cross-examination, this point is denied.

## III. Did the trial court abuse its discretion in its response to a jury question regarding Appellant's alibi?

▮ In his third point, Guinn argues that the trial court erred in its response to a jury question. Within an hour after beginning its deliberations the jury submitted three requests for exhibits and the following question: "Will the court provide the jury with the defendant's alibi as to his whereabouts at the time of the crime?" After discussion the court gave this written response: "I cannot provide additional evidence. The case must be decided on the evidence presented and the instructions given to you." Guinn's counsel first suggested that the jury be reminded that the State bears the burden of proof. After further discussion Guinn's counsel indicated that if the court was not inclined to follow her first suggestion that it should give the "generic" response that the jury be guided by the instructions already given. Defense counsel agreed with the eventual answer provided except for the first sentence, "[I] cannot provide additional evidence." Counsel said: "Without the first part I think its okay ... Just so my objection is noted and my two suggestions are in the record." Counsel did not amplify the basis for her objections to the first part of the court's response. Certainly the response was factually and legally correct.

On appeal, Guinn now contends that the jury's question demonstrates that it did not understand that the State bore the burden of proof and that Guinn had no obligation to provide an alibi. He now con-

tends that the trial court erred by not specifically referring the jury back to Instruction No. 4, the burden of proof instruction. He asserts that the court's response not only failed to correct the jury's misconception about the burden of proof but made it worse by inferring to the jury that since there was no evidence of alibi at the trial the defendant had failed to establish his innocence.

■ The response to a jury question is within the sound discretion of the trial court and the practice of exchanging communications between the judge and jury is not commended. *State v. Taylor*, 408 S.W.2d 8, 10 (Mo.1966). The court must be cognizant of the need to discourage communications that cannot really be answered (*e.g.*, requests for more evidence, argument, etc.) and at the same time not discourage legitimate inquiry. Neutral and generic responses about being guided by the evidence presented and to follow the instructions previously given are therefore not only the safest but the most favored. "Responses that simply refer the jury to the proper instructions already given are not improper." *State v. Johnston*, 957 S.W.2d 734, 752 (Mo. banc 1997). When previous instructions are correct, clear and unambiguous, then a trial court acts appropriately by instructing the jury to be guided by those instructions. *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998). Conversely when a jury's question indicates confusion about the instructions the court should respond with "concrete accuracy." *Id.* The weakness of Guinn's argument is that it requires a presumption not warranted by the inquiry: that the jury was confused about the burden of proof. Juries frequently in both civil and criminal cases ask if there is additional evidence that can be given them. Such a question alone cannot reasonably be interpreted to cast doubt on the jury's understanding of instructions upon the law. More reasonable is the interpretation argued by the State: Can the court give us any more information about the defendant's whereabouts, other than the evidence already presented by the State, that he was at the scene and committed the crimes in question?

■ Even where the State overtly directs the jury to consider a lack of evidence to support a defense theory of the case in a closing argument, the burden of proof has not been improperly shifted. *State v. Brown*, 998 S.W.2d 531, 548 (Mo. banc 1999). That a jury has noticed the lack of any evidence to refute the state's case that the defendant was there and did the charged deed (and inquires about it by question) likewise does not indicate any confusion about the court's burden of proof instruction.

The judgment is affirmed.

ROBERT G. ULRICH, PATRICIA A. BRECKENRIDGE, PAUL M. SPINDEN, JAMES M. SMART, JR., EDWIN H. SMITH, VICTOR C. HOWARD, THOMAS H. NEWTON, and FOREST W. HANNA, Senior Judge, concur with majority opinion.

HAROLD L. LOWENSTEIN, Judge, dissents in separate opinion; JOSEPH M. ELLIS, Judge, joins in dissent.

LOWENSTEIN, Judge, dissenting.

I respectfully dissent. Without overtly overruling law proclaimed by the U.S. Supreme Court and the Supreme Court of Missouri, which established an exception to the hearsay rule as a constitutional right, the majority opinion serves to emasculate that right by declining to apply precedential mandates to the facts at bar.

In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973),

the U.S. Supreme Court created a narrow exception to the general rule of excluding hearsay testimony against penal interest where three indicators of reliability of that evidence are established. *Chambers* was first recognized in Missouri in *State v. Turner*, 623 S.W.2d 4, 9 (Mo. banc 1981), as noted in the majority opinion. The testimony is admissible if under *Chambers* each confession: 1) "was in a very real sense self-incriminatory and unquestionably against interest"; 2) "was made spontaneously to a close acquaintance shortly after the [crime] had occurred"; and 3) "was corroborated by some other evidence in the case." [1] *Chambers*, 410 U.S. at 300–01; *State v. Davidson*, 982 S.W.2d 238, 242 (Mo. banc 1998). In addition, in Missouri the declarant must be unavailable. *Davidson*, 982 S.W.2d at 242.

The testimony of each of the four witnesses excluded here by the trial court meets all of these prongs. The proposed testimony of the appellant's mother, Charleen Robinson, mostly closely meets the *Chambers* and *Turner* requirements. Ms. Robinson was the first witness to testify about Johnson's out-of-court statement. She had known Johnson for five years, since Johnson was nine years old; Johnson and the appellant were best friends. Ms. Robinson testified that one day in late September or early October 1998, she visited her son at Johnson's apartment, and the declarant, Johnson, made a statement to several witnesses about the shooting:

Q: What did he [Johnson] tell you about this incident?

A: He said he didn't really shoot the woman, the woman grabbed his hand and really shot herself.

Q: Okay. Did you know what he was talking about?

A: Not at first.

Q: Did he go any further than that? Did he tell you any more details than that?

A: Said him and Tremayne had walked to the store to go get some cigarettes and he said that he pulled a gun to rob her. And I asked him, "Why would you do something like that?"

Q: How did he respond?

A: He said he really didn't know.

Q: Did he tell you anything more than what you've told the Court?

A: First he said he shot the bitch.

As the majority concedes, this statement meets the first prong as it is unquestionably against Johnson's interest: he "shot the bitch ." *Davidson*, 982 S.W.2d at 242. This prong is not met unless the statement exonerates the defendant. *See State v. Williams*, 958 S.W.2d 87, 90 (Mo.App. 1997). Though the declarant told Ms. Robinson that the appellant was at the scene, there is no indication from her testimony nor from any of the other testifying witnesses that the shooting was part of a conspiracy. Thus, the statement was against Johnson's interest, and there is no evidence that the confession would not exonerate the appellant.

This case also meets the second requirement of *Chambers*, that the statement be made "spontaneously" to a "close acquaintance" of the declarant shortly after the crime. *Davidson*, 982 S.W.2d at 242; *Chambers*, 410 U.S. at 300. As to the "close acquaintance" requirement, Ms.

---

1. In *Chambers*, the evidence was the declarant's sworn confession, the testimony of an eyewitness to the shooting, the testimony that the declarant was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22 caliber revolver and subsequent purchase of a new weapon. Also the sheer number of independent confessions provided additional corroboration.

Robinson is the appellant's mother, and she has known Johnson since he was nine years old because he was best friends with her son. Another witness, Tosheda Myrick (the appellant's cousin), lived with the appellant and the declarant. Myrick testified that Johnson told a group of people ("me, Tremayne, Tremayne's mama, Carlos, their two cousins, Carlos and his girlfriend and some dudes") that Johnson "robbed a lady and said he wasn't trying to shoot her but she wouldn't trying [sic] to give her valuables, so he said he just shot her." Again, though Myrick is the appellant's cousin, she lived with the declarant and thus can be considered a close acquaintance. Johnson also made the statement to the appellant's younger brother and sister on a later occasion as noted in the majority's recitation of the facts.

It is not the trial court's responsibility to assess the credibility of the potential witnesses in deciding whether to invoke the *Chambers* exception. *See e.g. Davis v. State,* 872 S.W.2d 743, 749 (Tex.Crim.App. 1994) ("Any motive on the part of [defendant's mother] to lie in an effort to exonerate her son is not a valid consideration in determining trustworthiness of the statement, but is a matter to be tested before the jury on cross examination."); *United States v. Atkins,* 558 F.2d 133, 135 (3d Cir.1977) (where the record revealed substantial corroborating circumstances of the trustworthiness of the declarant's statement, the trial court erred in considering the credibility of the minor witness); *United States v. Satterfield,* 572 F.2d 687, 692 (9th Cir.1978) ("A test for admissibility of hearsay statements based on the credibility of the witness who testifies about the statement is unrelated to the purpose of the general rule against hearsay.") The fact that all of the witnesses are the appellant's relatives is a trial matter for the prosecution to note and the jury to weigh.

As to the "spontaneous" element, though the majority notes that the Johnson made the statement to the appellant's siblings in response to a question, there is no evidence to suggest that the statement was coerced from Johnson, nor a rehearsed statement he planned to make. *Skillicorn v. State,* 22 S.W.3d 678, 687 (Mo. banc 2000). Even if the majority is correct in stating that the response was not "spontaneous" as to the siblings, it clearly was spontaneous according to Ms. Robinson's testimony: the above excerpt indicates that Ms. Robinson did not know at first what Johnson was talking about when he confessed to shooting the victim. As such, there is substantial evidence that Johnson's statement, at least to Ms. Robinson, was not a coerced or rehearsed or responsive statement.

Also in order to meet the second prong of *Chambers*, the confession must have been made "shortly after the [crime] occurred." *Chambers,* 410 U.S. at 300. Ms. Robinson testified that this statement was made either in the later part of September or the early part of October 1998. The crime occurred on September 11, 1998. Courts have held that six weeks is too long of a period of time to be meet this prong. *State v. Skillicorn,* 944 S.W.2d 877, 885 (Mo. banc 1997). This confession likely was made within two to four weeks after the crime, and I would decline to hold as a matter of law that two weeks does meet the *Chambers* qualification of "shortly after the crime." Thus, because the statement was made spontaneously within a short period of time to close acquaintances of the declarant, this case meets the second prong of the *Chambers* exception.

The third prong of the *Chambers* exception requires that the confession be corroborated by some other evidence in the case. *Davidson,* 982 S.W.2d at 242. Again, the confession in this case meets that prong.

First, the victim's purse was found across the hall from the apartment that Johnson and the appellant shared. Second, there is evidence that Johnson, not the appellant, wore braids at the time of the crime. Indeed, the appellant questions how well the victim really remembered her assailant-for example, she did not recall whether he had facial hair and she was unsure of his skin color other than that it was black. The facts indicated that the victim was discontent with the sketch published in the *Kansas City Star* because the assailant's nose was portrayed as bigger than it actually was, and the assailant's braided hair was not portrayed exactly as it appeared to her. Excluded testimony by the appellant's mother indicated that Johnson had no facial hair, while the appellant regularly maintained a mustache, a goatee and sideburns and had that facial hair at the time of the robbery and shooting. That testimony also indicated that Johnson had braids "like twigs," while the appellant had a "short afro."

Third, the jury requested exhibits and asked the court for guidance on several occasions. Although not "corroborative evidence," the jury's difficulty in reaching a verdict is noteworthy in considering close cases involving out-of-court confessions. *State v. Carroll,* 629 S.W.2d 483, 486 (Mo. App.1981). The *Carroll* court reversed and remanded for a new trial under *Chambers,* noting that the jury had difficulty returning a verdict. In remanding, the *Carroll* court noted: "Of course the jury need not believe any of [the hearsay] testimony; but nevertheless the jury was entitled to hear the declaration and give it appropriate consideration. *This is especially true in a close case.*" *Id.* (emphasis added).

Fourth, Johnson made his confession to several witnesses, four of whom testified. According to *Chambers,* the "sheer num-ber of independent confessions provided additional corroboration for each." 412 U.S. at 300. In *Chambers,* the declarant confessed four times. In the present case, the declarant confessed on at least two occasions, once to a large group, and four witnesses were available to testify. I would find these facts, taken together, to be sufficient, corroborative facts that meet the third *Chambers* prong.

Finally, as noted above, Missouri law requires unequivocally that the declarant be unavailable. *Davidson,* 982 S.W.2d at 242. Unavailability can be shown "where due diligence to secure the witness's attendance by compulsory process has failed." *State v. Hester,* 801 S.W.2d 695, 696 (Mo. banc 1991). In this case, Johnson was unavailable because the police were unable to execute a pick-up warrant for his arrest.

I appreciate the danger of inviting extrajudicial admissions into evidence. However, as was the case in *Carroll,* the facts here present a very close call under the standard of review. When an unavailable witness makes a declaration against penal interest, "where substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused, declarant's averments against an interest penal in nature *may not be excluded.*" *Carroll,* 629 S.W.2d at 485 (emphasis added).

Under the majority, it appears that testimony is deemed automatically unreliable if the witness is young or if the witness is related to the defendant. The majority's opinion closes the door on Missouri courts ever allowing a statement normally recognized under the *Chambers* exception.

The appellant was sentenced to thirty-nine years of imprisonment. The indicia of reliability set forth in *Chambers* and *Turner* provide a litmus test that a court must consider in ruling on whether testimony is unreliable. Whether or not a

court believes the testimony, it must let the jury reign where the indicia of reliability are present. Because this case substantially meets both the *Chambers* and *Turner* indicia of reliability, I would reverse and remand this case for trial to ensure that this criminal defendant's constitutional rights are honored by allowing the jury to exercise its function to hear and then decide the credibility of the out-of-court declarations.