STATE of Missouri, Respondent,

v.

Rodney H. CARROLL, Appellant.

No. WD31663.

Missouri Court of Appeals, Western District.

Nov. 3, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied, Dec. 8, 1981.

Application to Transfer Denied Jan. 18, 1982.

Michael L. McDorman, Woolsey & Yarger, Versailles, for appellant.

John Ashcroft, Atty. Gen., Henry T. Herschel, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant appeals from a conviction by jury of robbery in the first degree.[1] We reverse and remand for the reasons hereinafter stated.

About 9:00 a. m. on June 4, 1977, a robber with a pistol in hand confronted Mrs. Mary Danuser at her farm home. The robber demanded that she produce her money and when she hesitated, fired the pistol over her head. Mrs. Danuser became understandably fearful and produced a pocketbook out of its hiding place and handed over approximately $1,000 in cash. Thereupon the robber tied her up and left.

Soon afterward Mrs. Danuser was able to extricate herself. She found that her tele-

---

1. This was a retrial. The opinion reversing the original conviction is reported in *State v. Car-* *roll*, 585 S.W.2d 152 (Mo.App.1979).

phone line had been cut, and she started across a field to get help from a neighbor, Margie Dyer. While the two women were outside in the field, they both heard a motorcycle start up and they could see the motorcycle with two riders about a quarter of a mile away. Neither of the women could describe or identify those two riders. However, at trial Mrs. Danuser gave positive identification of defendant as the one who had robbed her at her home.

Defendant presented a defense of alibi. In that connection he produced a number of witnesses who testified to various business activities conducted by defendant during the morning of June 4, 1977, all of which transpired a considerable distance from the Danuser farm. In addition, defendant offered evidence that the robbery in question had been committed by James Bohannon and Jackie Miller, with no participation on the part of defendant. Further facts with respect to this second defense will be outlined below in Section II of this opinion.

For his points on this appeal, defendant argues: (1) that evidence of an extra-judicial declaration by Jackie Miller was improperly excluded from evidence; (2) that the trial court improperly refused to make investigative services available to defendant's court-appointed attorney; and (3) that the state's evidence was insufficient to support a conviction. If Point No. 3 be correct, then an outright reversal and discharge of defendant would be required. Therefore, that point will now be discussed first.

## I.

■ In considering the sufficiency of the evidence, all evidence, direct and circumstantial, and all reasonable inferences supportive of the verdict must be accepted and those portions of the record contrary to a finding of guilt must be disregarded. *State v. Turner*, 623 S.W.2d 4 (Mo. banc No. 61974, decided October 13, 1981). The state offered as part of its case positive eye witness testimony by the victim identifying defendant as the robber. That suffices to make a submissible case. *State v. Dowe*, 432 S.W.2d 272 (Mo.1968); *State v. Allen*,

485 S.W.2d 28 (Mo.1972); *State v. Long-meyer*, 566 S.W.2d 496 (Mo.App.1978); *State v. McMillan*, 593 S.W.2d 629 (Mo.App. 1980).

## II.

As part of his case, defendant offered to prove through witness Day that when the latter was a cell mate with Jackie Miller in the Laclede County jail, Miller stated to Day that he and Bohannon were responsible for robbing Mrs. Danuser and that defendant had nothing to do with that crime. The state objected to this offer of proof on the ground of hearsay, and that objection was sustained. Defendant contends that the declaration in question was against Miller's penal interest and should have been admitted as an exception to the hearsay rule.

Defendant concedes that "[a] declaration against penal interest in criminal cases has heretofore been excluded by our courts." However, he argues that this position by the Missouri courts is contrary to the growing trend of authority, and he argues that Missouri should now recognize declarations against penal interest as exceptions to the hearsay rule in criminal cases as well as in civil cases. At the time this case was submitted, the Attorney General advised this court that this issue had already been submitted to the Missouri Supreme Court, and consequently this case has been held in abeyance awaiting resolution of the question by the Supreme Court.

■ The Missouri Supreme Court has now reconsidered this subject in *State v. Turner, supra,* and has decided that in light of *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), when an unavailable witness makes a declaration against penal interest, "where substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused, declarant's averments against an interest penal in nature may not be excluded. . . ."

■ The question for consideration here therefore narrows to an inquiry as to whether there are in this case "substantial

indicia of reliability" to support Miller's declaration.[2] We conclude in the affirmative.

The evidence shows that defendant acquired possession of a blue motorcycle on Thursday afternoon, June 2, 1977. He testified that he lent that motorcycle to Bohannon at the latter's request at about 7:00 a. m. on June 4th. Defendant's wife corroborated that loan at the time mentioned. Annie Dinwiddie, Bohannon's girlfriend, corroborated Bohannon going to defendant's home at the time mentioned.

Also in evidence is the testimony of Mrs. Danuser and her neighbor Mrs. Dyer, that they both heard a motorcycle start up shortly after the robbery and they saw two men on that motorcycle. Supplementing that testimony is the evidence of Jacob Talley who testified that he was driving a truck when two men with a stalled motorcycle flagged him down between Richland and Brumley. When shown a photograph of defendant's motorcycle, he identified it as the one he saw on the morning of June 4 and he further identified the motorcycle he saw as being blue in color. Furthermore, when shown pictures of Bohannon and Miller, he identified them as photographs of the two men he had met on that occasion.

Talley stopped and after some consultation, they loaded the motorcycle into the back of the truck, and Talley took the motorcycle and the two young men into Brumley. When they arrived there, the two young men gave Talley $30 in cash for his trouble. The three of them then went into a tavern where Talley purchased beer. Talley stated that he used the $30 from the young men toward paying off an account he owed in the tavern.

The bartender, Bill Whittle, also testified. He remembered Talley and the two young men coming into the tavern Saturday morning, June 4, 1977. When shown pictures of Bohannon and Miller, he identified them as the two who had come in with Talley. In addition, Whittle identified the receipt which he had given to Talley for cash paid by Talley on his account. That receipt, offered in evidence, is dated June 4, 1977.

Still further, defendant testified that his motorcycle was returned to him by Bohannon at about noon on June 4, and that Bohannon was accompanied by Miller. They left the motorcycle, and defendant gave them a ride home in his automobile. Defendant's wife confirms the return of the motorcycle by Bohannon and testified that she thought Miller accompanied Bohannon at that time.

The foregoing evidence constitutes substantial corroboration of Miller's declaration. Of course the jury need not believe any of that testimony; but nevertheless the jury was entitled to hear the declaration and give it appropriate consideration. This is especially true in a close case. It is to be noted that the jury here started deliberations at 3:42 p. m. and returned to the courtroom at 8:30 p. m., disagreed. At that point, the court gave them the "hammer instruction." Thereupon the jury again retired at 8:35 p. m. and deliberated until 10:15 p. m., at which time they finally returned their guilty verdict. This demonstrates that the jury had no easy time agreeing upon a guilty verdict. It cannot be said with any degree of certainty what the jury would have done if they had the benefit of the Miller declaration against interest. We conclude that it was error to exclude this evidence.

■ The Attorney General argues that even if the exclusion was error, it was harmless because the Miller declaration was merely cumulative to the ten alibi witnesses. That contention seeks to lump together two very distinct defenses. The alibi testi-

2. There is no question in this case as to Miller's unavailability. This was substantially conceded by the prosecutor in the course of colloquy between counsel and the court in connection with the objection to Miller's testimony. Defense counsel stated to the court that Miller had been subpoenaed but was not present. At that point the prosecuting attorney stated: "the witness has been gone from the area for at least two years, and the subpoena has not been served on him. It is well known that he has absconded and there are warrants for his arrest outstanding."

mony tended to show that defendant did not commit the crime. Miller's declaration, on the other hand, tended to show that other parties were the guilty felons. By the latter testimony, defendant was saying to the jury in effect, "Not only did I not rob Mrs. Danuser, but I can also prove to you who did." Those are two completely different things. One is not simply cumulative to the other.

### III.

With respect to the denial of investigative assistance to defendant's attorney, an answer may not strictly be necessary in view of the conclusion reached under Section II. Nevertheless, the question will be considered because of the likelihood of it recurring on retrial.

■■■ As part of his preparation for the trial of this case, defendant's court-appointed attorney filed a Motion for Assistance. That motion provided in pertinent part as follows:

"1. That Defendant, Rodney H. Carroll, has been declared by this Court to be an indigent person and Ronald K. Carpenter has been appointed counsel by this Court to represent this Defendant in the above entitled cause;

"2. That there are several witnesses whose testimony on behalf of the Defendant is material and necessary but who cannot be located by the proper authorities for the issuance of subpoenas upon them or whose whereabouts are at this time unknown;

"3. That Section 600.150 RSMo. authorizes the advancement of funds for the procurement of investigative services;

"4. That the Defendant is financially unable to obtain these services otherwise."

That motion was overruled.

Defendant contends that he was entitled to investigative assistance and that the overruling of his motion was error. He points to Section 600.150(2) RSMo 1978, which provides:

"2. Any counsel appointed under the provision of this section may request an advance of funds necessary to obtain investigative, expert or other services required for an adequate representation, in an ex parte application. Upon a finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the indigent person is financially unable to obtain them, the court shall authorize the immediate advancement of such funds to counsel to obtain such services on behalf of the person...."

This provision requires that before special services will be made available at state expense, defense counsel must show and the court must find that the services requested are necessary for an adequate representation. Taking everything stated in defendant's motion as true, it is insufficient to meet that requirement, for the reasons that: (1) the witnesses sought to be interviewed are not named or otherwise identified; (2) no indication is given as to what the testimony would be or why it would be important; and (3) there was no explanation as to why appointed counsel could not himself have conducted the necessary investigation.

A case very similar to the one at bar is *State v. Williams*, 207 N.W.2d 98 (Iowa 1973). In *Williams*, the defendant filed an application for state-furnished funds for investigative purposes. As justification for the request, he asserted:

" '1. That the investigation is necessary and imperative for the defendant to adequately prepare for trial and to insure the defendant a fair trial.

" '2. That there are certain witnesses whose names are known to the defense counsel, but defense counsel is unable to locate them, and that their testimony is necessary for the defense of defendant.' "

The trial court overruled the motion on the ground that it was too vague and indefinite. The Iowa Supreme Court affirmed, holding as follows:

"When counsel requests court authority for the employment of an investigator or

experts, he should point out with specificity the reasons such services are necessary. Although counsel has the primary responsibility to determine if such investigative services will be necessary, the proper and effective administration of section 775.5 requires the trial judge to satisfy himself that such services are necessary and to articulate the reasons therefor.

"In view of the lack of specificity in defendant's application we conclude the trial court could not, on the sole basis of defendant's application, ascertain whether his claim was 'necessary in the interest of justice' or was 'frivolous and unwarranted.' ..."

Similarly in *Puett v. Superior Court for Cty., Etc.*, 96 Cal.App.3d 936, 158 Cal.Rptr. 266 (1979), a denial of a motion by an indigent defendant for investigative services was affirmed on the following reasoning:

"Notwithstanding the in camera hearing granted defendant, so far as the record shows no particular witness to be interviewed was identified nor was it indicated what information any such witness was believed to have. No estimate of the costs to be incurred was afforded the court, nor were the extent and nature of the investigative services claimed to be required specified or described in any way other than interviewing an indeterminate number of unidentified witnesses for unspecified purposes. Neither was the court informed as to the nature or extent of necessary investigative services that defense counsel was able or unable to perform herself....

"In short, defendant made no showing of necessity beyond that which, as the trial court observed, inheres in the defense of virtually any criminal prosecution—that is, that investigative services would be nice to have, would conserve the time of defense counsel, and might turn up something favorable to the defense. While we do not hold that a detailed itemization of the investigative services claimed to be necessary must be furnished or that a documented estimate of the costs to be incurred must be furnished, it is insufficient to compel authorization of investigative services at public expense to show only that it would be convenient to have investigative services.

"... 'The showing required of the indigent defendant substitutes for the substantial economic inhibition upon one's spending his own resources in an endeavor known to be useless. The necessary parity between the indigent defendant and others is to be achieved not by permitting the indigent to spend public funds at his whim but rather by administration of the requirement of the showing required by the indigent.' [citation omitted]."

Another pertinent case is *State v. Inman*, 39 N.C.App. 366, 249 S.E.2d 884 (1979), where a defendant moved for the services of an independent investigator, alleging: "'That certain aspects of this case, upon investigation may prove invaluable to this defendant in his defense and the location of certain witnesses may also be necessary for the proper defense of this case.'" At a hearing on the motion, defense counsel stated that there were two witnesses whom defendant particularly wanted. One was an additional suspect whom the police had interrogated but who had absconded before trial, and the police were searching for him. The motion was denied, and the appellate court affirmed as follows:

"The rule in this state is that an investigator may be appointed by the superior court to aid an indigent defendant, but such appointment should be made with caution and only upon a clear showing that specific evidence is reasonably available and necessary for a proper defense. Mere hope or suspicion that such evidence is available will not suffice....

\*     \*     \*     \*     \*     \*

"We hold that the defendant did not make a clear showing that specific evidence was reasonably available for a proper defense so that an independent investigator could be appointed. As to the witness for whom the police were

searching, we cannot see how he would be reasonably available to a private investigator if the police could not find him. . . ."

A good summary of the factors to be considered with respect to furnishing investigative services at state expense to an indigent defendant is stated in *Johnny S. v. Superior Court, Etc.,* 90 Cal.App.3d 826, 153 Cal.Rptr. 550 (1979) in which the opinion states that the trial court "should consider the nature of the case, the probable length and the complexity of the proceedings, possible defenses to the allegations, the specific reasons advanced to support the need for an investigator, the capacity of counsel rather than an investigator effectively to provide the needed services and the propriety of his doing so." The opinion further holds that "the determination whether to authorize retention of an investigator as a necessary expense of counsel, and if so the extent of such expense, is a matter within the sound discretion of the trial court which will not be disturbed by a reviewing court in the clear absence of abuse."

Other cases holding to the same effect are *State v. Rovles,* 41 Or.App. 653, 598 P.2d 1249 (1979) and *State v. Tatum,* 291 N.C. 73, 229 S.E.2d 562 (1976). *See also,* Annot., 34 A.L.R.3d 1256, Section 5 at p. 1272 (1970).

Under the foregoing authorities, defendant's motion here was plainly insufficient. Although defendant in his brief in this court stresses the importance of finding Jackie Miller (whose declaration against interest is discussed at some length in Section II of this opinion) there is no indication that a private investigator would have been any more successful than the public authorities who had been seeking this man under arrest warrants for a period of two years. The expenditure of public monies to hire a private investigator to further search for Miller would not be warranted. *State v. Inman, supra; State v. Rovles, supra.*

Still further, in order to complain successfully about the refusal to authorize investigative services, defendant would have to demonstrate how that refusal resulted in prejudice to him. *Sykes v. State,* 458 S.W.2d 319 (Mo.1970); *State v. Brown,* 599 S.W.2d 498 (Mo.banc 1980). No showing of prejudice has been made in this case.

The conviction and judgment are reversed and the cause remanded for new trial because of the erroneous exclusion of Day's offer of proof concerning Miller's declaration against penal interest.

All concur.