STATE of Missouri, Plaintiff–
Respondent,

v.

David Lee ROBINSON, Defendant–
Appellant.

No. 24600.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 12, 2002.

Rosalynn Koch, Assistant State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Patrick T. Morgan, Assistant Attor-

ney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

David Lee Robinson ("Appellant"), was convicted by a jury of one count of murder in the first degree, a violation of Section 565.020,[1] and one count of armed criminal action, a violation of Section 571.015. He was sentenced to the consecutive terms of life imprisonment without the possibility of parole on the murder count, and to life imprisonment on the armed criminal action count. Appellant raises two points in this appeal. In his first point, Appellant alleges that the trial court abused its discretion in granting the State's motion in limine relating to the testimony from a witness proffered by Appellant. In his second point, he argues that the trial court plainly erred by making a statement, in front of the jury, about his past friendship with a rebuttal witness for the State. We deem Appellant's first point to be without merit, decline to review his second point as it was not preserved for appellate review, and affirm the judgement.

On the evening of August 5, 2000, Sheila Box ("Sheila") went to Cheers Bar and Grill in Sikeston, Missouri with her fiancée, L.A. Thompson ("Thompson"). She left several times during the evening, returning to Cheers each time except after her last departure, which was between 10:00 P.M. and 10:30 P.M. Her stated reason for this final trip was to purchase some "last minute items" from a local store.

Sheila left Cheers driving a two-toned Chevy Suburban ("Suburban") owned by Thompson and containing a loaded .38 caliber revolver in a locked console. Sheila took with her three money bags containing $300 in cash and checks representing receipts from Thompson's restaurant business that she managed, which she planned to deposit in a bank the following morning. Sometime during this trip, Sheila stopped at a pay phone to call Thompson and ask whether she should bring dinner to him when she returned to Cheers.

At approximately the same time that Sheila was calling Thompson from the pay phone, Albert Baker ("Baker") was walking to his home in Sikeston after purchasing crack cocaine in an area known as "The Bottoms." This area of Sikeston, which included the place from which Sheila placed her phone call, was well known to area residents as a high crime area and a focal point for drug trafficking. As Baker took a shortcut across a field he heard a gunshot, and shortly thereafter, saw Appellant walking along a nearby dirt path known to area residents as the "pig path."

Baker continued to observe Appellant as Appellant crossed the street that fronted the gas station parking lot from which Sheila was making her phone call. The area was well lit by an overhead street lamp. According to Baker, Appellant walked up to the Suburban in which Sheila was sitting with the pay phone in her hand, fired one shot from a handgun into the open driver side window and walked away. Sheila immediately drove away in the Suburban at a high rate of speed and in an erratic fashion, almost colliding with another vehicle in the process.

The next person to observe Sheila was Christopher Jenkins ("Jenkins"), who was watching television in his trailer, when he heard a loud noise. When Jenkins went out of the trailer he saw the Suburban crash through a perimeter fence and into a building. Jenkins called for emergency assistance when he looked inside the Suburban and found Sheila slumped over the steering wheel.

Paramedics found Sheila covered with blood and initially unresponsive. They also noticed a blood clot on the skin of her

1. References to statutes are to RSMo (2000) unless otherwise indicated.

upper left chest. Shortly thereafter, Sheila began to respond to questions, but was confused and combative. When asked who had shot her, she denied having been shot. Between Sheila's legs, a Sikeston police officer found the loaded .38 caliber revolver normally stored in the Suburban's console. Aside from ten to twenty dollars on the floorboard of the Suburban's passenger side, no money or money bags were located.

Sheila was transported to a local hospital, where emergency physicians treated her for two gunshot wounds—one to her upper left chest and one to her right side. They were unable to repair the extensive damage to Sheila's heart and lungs, and she died during surgery. An autopsy revealed that the shot to the left side of Sheila's chest had been fired from a range of six to eighteen inches, and at an approximately downward 45–degree angle. A bullet removed from just under the skin of Sheila's right side was tested and found not to be a ballistic match with the gun found in her possession.

On August 6, 2000, Appellant was detained and questioned regarding the shooting of Sheila. Appellant claimed to have been at a family social gathering at the time Sheila was shot, and he was subsequently released from custody. Eleven days later, Baker, who was being held in a Sikeston facility on an unrelated charge, asked to speak with Detective John Blakley ("Blakley") of the Sikeston Public Safety Department. He told Blakley what he had observed the evening Sheila was shot, including details not previously revealed to the public. On the basis of this statement, and upon inconsistencies Blakley had uncovered in Appellant's alibi, Blakley obtained and executed a warrant for Appellant's arrest.

Appellant did not testify at his jury trial, but offered the testimony of three relatives who were consistent in placing Appellant at a family gathering between 10:00 P.M. and 11:00 P.M. on August 5, 2000, the time Sheila was believed to have been shot. The jury nevertheless found Appellant guilty of murder in the first degree and armed criminal action, and he was sentenced as indicated previously. This appeal followed.

In his first point relied on, Appellant alleges that the trial court abused its discretion in granting the State's motion in limine to exclude the testimony of a witness who would have testified that his cousin had confessed to the murder of Sheila. Appellant claims the cousin's alleged statement represented an admission against interest and was sufficiently reliable to be admissible hearsay. According to Appellant, the testimony, if admitted, would likely have resulted in Appellant's acquittal.

 Trial courts have broad discretion in ruling on the admission or exclusion of evidence at trial. *State v. Bryan*, 60 S.W.3d 713, 718 (Mo.App. S.D.2001). Absent a clear abuse of discretion, we will not disturb the trial court's rulings in this area. *Id.* Such abuse of discretion occurs when the trial court's evidentiary ruling is clearly against the logic of the circumstances before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful deliberate consideration. *State v. Anglin*, 45 S.W.3d 470, 472 (Mo.App. W.D. 2001). "Furthermore, in matters involving the admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* (quoting *State v. Harrison*, 24 S.W.3d 215, 218 (Mo.App. W.D.2000)).

Prior to the commencement of trial, the State filed a motion in limine to exclude

the testimony of Romance Mosby ("Mosby"), an inmate at the Boonville, Missouri Correctional Facility ("BCC"). The State anticipated Mosby would testify that, while he was incarcerated with his cousin, Carlos Jones ("Jones"), Jones confessed to Mosby that he had murdered Sheila. The trial court granted the State's motion in limine and precluded Appellant from referring to Mosby's allegation in his opening statement to the jury, but allowed Appellant to make an offer of proof during trial and outside the presence of the jury.

During this offer of proof, Mosby testified that, while he was incarcerated in BCC in June 2001, his cousin (Jones), with whom Mosby professed to be "close," admitted to Mosby that he had shot Sheila in the course of robbing her. Under cross-examination, Mosby stated, first, that he had no recollection of what Jones had told him happened to the gun used in the shooting of Sheila, then, that he recalled telling a sheriff's deputy that Jones had said he threw the gun in a river and, finally, that Jones had told him he disposed of the gun on a gravel road. Mosby also testified that Jones claimed he shot Sheila in self-defense in that she was trying to shoot Jones. Mosby confessed, however, that he had not previously mentioned to investigators this aspect of Jones' alleged statement. Mosby also admitted that he had refused to submit to a polygraph examination to verify the truth of his account to police concerning Jones' alleged statements. At the close of the offer of proof, the trial court reaffirmed its prior ruling excluding Mosby's testimony. Appellant claims this ruling was an abuse of the trial court's discretion.

▮▮▮ Missouri courts have been consistent in declaring that statements against penal interest, admissible under Federal Rules of Evidence 804(b)(3) and in several of the States as a valid exception to the hearsay rule, are inadmissible in criminal proceedings in Missouri. *State v. Blankenship*, 830 S.W.2d 1, 6 (Mo. banc 1992); *Anglin* at 473; *State v. Dayringer*, 755 S.W.2d 698, 701–02 (Mo.App. S.D.1988). Such statements are, however, admissible under limited circumstances, namely, where due process is implicated and where circumstances strongly indicate the reliability of the statement. *Anglin* at 473. For this narrow exception to apply, "[a]ppellant must show that the declarant is unavailable as a witness, there is substantial indicia of reliability of the alleged declaration, and the declaration, if true, would exonerate appellant." *Id.* (quoting *State v. Jennings*, 815 S.W.2d 434, 448 (Mo.App. E.D.1991)); *Dayringer* at 702. All three prerequisites must be present for the statement to be admissible. *Dayringer* at 702. Appellant argues that the statements made by Jones to Mosby are admissible in that they meet all three criteria.

Appellant relies heavily on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In that case the defendant, Chambers, charged with the murder of a police officer, obtained the sworn affidavit of a man named McDonald, in which he confessed to killing the police officer. *Id.* at 287, 93 S.Ct. 1038. After this statement was admitted into evidence, the prosecution elicited testimony from McDonald that revealed he had recanted his confession under oath in a prior court proceeding. *Id.* at 288, 291, 93 S.Ct. 1038. Chambers sought to inquire of McDonald concerning this renunciation, but was thwarted in his attempt on the basis of Mississippi's then-applicable "voucher rule." [2] *Id.* at 291–92, 294, 93 S.Ct. 1038.

---

**2.** This term refers to a largely defunct common law rule that precludes a party from impeaching his or her own witness. *See Chambers* at 295, 93 S.Ct. 1038.

Chambers then sought to call three other witnesses who would say McDonald had confessed his guilt to them as well. *Id.* at 292, 93 S.Ct. 1038. The trial court sustained hearsay objections made by the prosecution as to the testimony of each of the three would-be witnesses. *Id.* at 292–93, 93 S.Ct. 1038. The United States Supreme Court, in overturning Chambers' conviction, noted that the inculpatory statements McDonald made to the three excluded witnesses "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Id.* at 300, 93 S.Ct. 1038. According to the Court, specific indicators of the statements' reliability included that (1) McDonald made them spontaneously and to a close acquaintance shortly after the crime; (2) each statement was corroborated by other admitted evidence; and (3) they were "in a very real sense self-incriminatory and unquestionably against interest." *Id.* at 300–01, 93 S.Ct. 1038. The Court held that, *taken together,* the trial court's refusal to admit the testimony concerning McDonald's confession *and* its failure to allow Chambers to impeach McDonald on the stand because of the voucher rule constituted a violation of the Due Process Clause of the United States Constitution. *Id.* at 302, 93 S.Ct. 1038.

The Court in *Chambers* took great pains to limit the disposition of that case to its particular facts, stating that "[i]n reaching [its] judgment, [the Court] establish[ed] no new principles of constitutional law. Nor [did the Court's] holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, [the Court held] quite simply that under the facts and circumstances of [the] case the rulings of the trial court deprived Chambers of a fair trial." *Id.* at 302–03, 93 S.Ct. 1038. In a recent case, the Court highlighted the fact-specific nature of the holding in *Chambers,* noting that it "was an exercise in highly case-specific error correction." *Montana v. Egelhoff,* 518 U.S. 37, 52, 116 S.Ct. 2013, 2022, 135 L.Ed.2d 361, 373 (1996). The Court in *Egelhoff* went on to explain that "the holding of *Chambers*—if one can be discerned from such a fact-intensive case—is certainly not that a defendant is denied 'a fair opportunity to defend against the State's accusations' whenever 'critical evidence' favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." *Id.* at 53, 116 S.Ct. 2013.

The first post-*Chambers* case to reach the Missouri Supreme Court involving a defendant's attempt to introduce out of court declarations against penal interest was *State v. Turner,* 623 S.W.2d 4 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). Appellant directs us to *Turner* in support of his contention that "*Chambers* has been adopted in Missouri." It is far more accurate, however, to characterize *Turner* as distinguishing the facts of that case from those in *Chambers,* a case "where sufficient indicia of reliability appear and declarant's complicity if true would exonerate the accused." *Turner* at 9. The court in *Turner* observed that "the dangers inherent in opening the door to extrajudicial confessions made by one not a party to the proceeding militate against extending the rule of *Chambers* beyond the facts presented there." *Id.* (internal citations omitted). *See Blankenship,* at 7 (stating that the reason for the *Turner* court's caution in extending Chambers beyond its facts "is that the uncorroborated out-of-court confession of an unavailable witness offered in a criminal case often occurs under circumstances that evoke suspicion as to its relia-

bility"). "The confessions of an unavailable witness traveling under the banner of declarations against interest are even considered untrustworthy in the more 'liberal' jurisdictions that follow the federal rules of evidence. Under those rules, declarations against the penal interest of an unavailable witness are inadmissible unless 'corroborating circumstances clearly indicate the trustworthiness of the statement.'" *Blankenship* at 7 (quoting Federal Rules of Evidence 804(b)(3)).

Summarizing, the general rule in Missouri is that extrajudicial statements against penal interest are not admissible as an exception to the hearsay rule. Where due process requires, however, such statements will be admitted if (1) the declarant is unavailable as a witness; (2) the statements, if true, would exonerate the defendant; and (3) the statements carry substantial indicia of reliability. The United States Supreme Court in *Chambers* recognized three such indicia of reliability, as have Missouri courts, namely, (1) the statement must be self-incriminatory and undeniably against self-interest; (2) the statement must be made spontaneously to a close acquaintance shortly after the crime; and (3) the statement must be corroborated by other admissible evidence.

■ We find, on the basis of this standard, that Jones' statements to Mosby fail to meet the threshold requirements for admission and that the trial court did not err in excluding Mosby's testimony. First, Appellant failed to show that Jones was unavailable as a witness. Indeed, Appellant frankly concedes as much in his brief to this court. He argues, however, that "Missouri courts recognize ... that unavailability is not a requirement in *Chambers*," citing *State v. Guinn*, 58 S.W.3d 538, 544 (Mo.App.W.D.2001). Appellant mischaracterizes the court's holding in *Guinn*. The circumstances of that case were such

that the State, rather than the appellant as here, argued that the *Chambers* Court emphasized the *availability* of the declarant as a witness and not his *unavailability*. *Id.* at 543. Assuming, arguendo, that the *Chambers* Court believed it important that the declarant in that case was available to testify, the court in *Guinn* stated that it "might be persuaded by the State's argument but for its candid acknowledgment that the Missouri Supreme Court described 'unavailability' as an element of the *Chambers* rule." *Guinn* at 545 (citing *State v. Davidson*, 982 S.W.2d 238, 242 (Mo. banc 1998)). Noting that it was "bound to follow the decisional dictates of our Supreme Court," as are we, the *Guinn* court considered cases such as *Davidson* dispositive of the issue in that case. *Id.* The court also noted, as have we, the "long line of post-*Turner* decisions by the intermediate appellate districts that have ... universally declared that unavailability is a[sic] element for application of the *Chambers* doctrine." *Id.* at 544 (citing *State v. Carroll*, 629 S.W.2d 483, 485, 486 n. 2 (Mo.App. W.D.1981); *State v. Danback*, 886 S.W.2d 204, 208 (Mo.App. E.D.1994); *Dayringer* at 702). *See also Jennings* at 448. Appellant admits Jones was not shown to be unavailable as a witness, and we find no contrary evidence in the record. Therefore, his statements fail to meet the first requirement for admitting extrajudicial statements against penal interest.

Even if Jones' availability as a witness were not fatal to Appellant's first point on appeal, he would be unable to clear the hurdle presented by the additional requirement that there be "considerable assurance" of the statements' reliability. *Guinn* at 545 (quoting *State v. Skillicorn*, 944 S.W.2d 877, 885 (Mo. banc), *cert. denied*, 522 U.S. 999, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997)). Again, the United States Supreme Court in *Chambers* recog-

nized three such indicia of reliability, as have Missouri courts, namely, (1) the statement must be self-incriminatory and undeniably against self-interest; (2) the statement must be made spontaneously to a close acquaintance shortly after the crime; and (3) the statement must be corroborated by other admissible evidence. *Id.* at 300–01, 93 S.Ct. 1038. Of these three indicia of reliability, Jones' statements to Mosby evidence but one, namely, that they are self-incriminatory and undeniably against self-interest in that Jones purports to be Sheila's killer.

Regarding the second of the three indicia of reliability—that the statement must be made spontaneously to a close acquaintance shortly after the crime—Appellant relies upon *Chambers* in arguing that the reliability of Jones' statements flows from the fact he is Mosby's cousin. However, that case involved multiple statements made to non-relative friends of long standing and is, therefore, not factually analogous to the instant case. *Chambers* at 292–93, 93 S.Ct. 1038. Missouri courts have examined the "important factor" of the relationship between the declarant and the would-be witness, noting that a "statement, particularly an admission to a crime, made to someone of long-standing and confidential relationship is more likely to be trustworthy." *Guinn* at 545. *See also Anglin* at 473 (statement was unreliable when made to one whom the declarant had met a few days prior to making the inculpatory statement). It is worth noting that the court in *Guinn* made no positive assumptions regarding any link between familial relationship and the reliability of statements made by one relative to another. There is scant evidence before us

regarding the relationship between Jones and Mosby, aside from testimony they were cousins and that they were "close." Moreover, the record indicates too lengthy a period—almost a year—between the shooting of Sheila and Jones' alleged statement to Mosby to meet the "close acquaintance" prong of *Chambers* indicia of reliability, which requires the incriminating statement be made shortly after the crime. *Chambers* at 300, 93 S.Ct. 1038; *Anglin* at 473 (statement made five to ten days after crime failed "shortly after crime" test).

The last of the three indicia of reliability listed in *Chambers*—that other admitted evidence corroborates the statements—is equally lacking here. Appellant contends otherwise, arguing that (1) Jones' allegation that he shot Sheila in self defense is corroborated by the fact that she was found with a loaded gun on her person; (2) Jones' claim that Sheila made her phone call from a different pay phone than described by Baker in his testimony is corroborated by the testimony of another witness who recalled a different route of escape than did Baker; and (3) finding Sheila, who was alleged to have been a recovering drug abuser, in a high-crime area corroborates Jones' allegation that she was there to buy marijuana. We find these arguments unpersuasive and their rejection by the trial court clearly short of an abuse of discretion. No physical or testimonial evidence in the record connected Jones to the shooting of Sheila. No testimony was offered concerning Jones' statement by anyone other than Mosby, who may well have had a compelling reason to direct police attention away from himself.[3] It cannot reasonably be said that the facts that appear in the record before us bear

---

**3.** During the offer of proof a deputy sheriff testified that a confidential informant had said Mosby was Sheila's killer, as had a fellow inmate of Mosby. Only after these accusa-tions were lodged did Mosby mention to anyone the inculpatory statements allegedly made by Jones.

significant resemblance to the corroboration present in *Chambers*.

In short, Appellant failed to show Jones was unavailable as a witness, or that his alleged statements carry sufficient indicia of reliability as delineated in *Chambers*, and that case's progeny in Missouri, so that any due process exception to the rule barring the admission of statements against penal interest in criminal proceedings should apply. Appellant's first point is denied.

In Appellant's second point, he argues that the trial court committed plain error in informing the parties in the presence of the jury of his "longstanding friendship" with a rebuttal witness for the State, Hugh Collins ("Collins"). Appellant alleges the judge's comments prejudiced the jury against Appellant in that they "placed a judicial imprimatur of veracity" upon Collins' testimony and improperly bolstered the State's case.

■ Appellant's allegation of error is reviewable only for plain error, as he did not object to the judge's comments at trial. Rule 30.20.[4] An act or decision of a trial court constitutes plain error only if it so substantially impacts the rights of a party that manifest injustice or a miscarriage of justice will result if left uncorrected. *State v. Wells*, 33 S.W.3d 210, 212 (Mo. App. S.D.2000). The burden of proving such manifest injustice or miscarriage of justice lies with the party alleging plain error. *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993).

Collins, the owner of a convenience store in the area of Sikeston where Sheila was killed, testified that Appellant was in his store at approximately 9:00 P.M., and

again at approximately 10:00 P.M., on August 5, 2000, the approximate time Sheila was killed. This testimony was corroborative of the testimony of Appellant's girlfriend, who testified on behalf of Appellant and claimed to have seen him driving through the intersection where Collins' store was located at about the same time Collins said he was in his store. Collins also testified that, although his store utilized security cameras, and contrary to a statement made by Appellant to a detective investigating the murder, he did not possess a video record of the shooting.

At the conclusion of Collins' testimony, the trial court made the following comments:

> THE COURT: For the record, Mr. Collins is an old New Madrid friend of mind [sic], he grew up in New Madrid. We graduated high school together.

> THE COURT: See you, Hugh.

■ Plain error review under Rule 30.20 is discretionary. *State v. Chaney*, 967 S.W.2d 47, 59 (Mo. banc 1998); *State v. Smith*, 979 S.W.2d 215, 217 (Mo.App. S.D.1998). "The 'plain error' rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *Chaney* at 59 (quoting *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998)). *See also State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983). "Unless a claim of plain error facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this [c]ourt will decline to exercise its discre-

---

4. References to rules are to Missouri Rules of Criminal Procedure (2002) unless otherwise indicated.

tion to review for plain error under Rule 30.20." *Chaney* at 59 (quoting *Roberts* at 592). In keeping with this standard, we decline to exercise our discretion to review Appellant's second point for plain error, as it fails to "facially establish[ ] substantial grounds for believing" that the trial court's comments resulted in "manifest injustice or miscarriage of justice." *Id.*

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.